IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MALCOM M. RYIDU-X #273-575,
    Plaintiff,            :

         v.                     :   CIVIL NO. WDQ-12-0423

J. MICHAEL STOUFFER, Commissioner  :
JOHN S. WOLFE, Warden
CHERIE N. PEAY, Assistant Warden    :
ALLEN GANG, Security Chief
REAGAN, Lieutenant (Segregation Unit  :
   Supervisor)
ERIC JEFFERSON, Captain              :
KELSON, Lieutenant (Segregation Unit
   Supervisor)                             :
CHRISTOPHER OGBOLU, Lieutenant
WILLIE TAYLOR, Lieutenant           :
ROBERT JORDAN, Sergeant
IWILL MASON, Sergeant               :
RENE GREENE, Sergeant
AJIOBODE, Officer                     :
ALEXANDER FLEET, Officer
JON SANDSTROM, Hearing Officer    :
MARIA MAXIMO-SABUNDAVO,
   Dietary Supervisor               :
JOHN DOE
         Defendants[1]            :

MEMORANDUM OPINION

Malcom M. Ryidu-X, *pro se*, sued Commissioner J. Michael Stouffer and others[2] (collectively, the "Defendants") for civil rights violations. Pending is the Defendants' motion to dismiss or, in the alternative, for summary judgment. No hearing is necessary. *See* Local Rule

---

[1] The Clerk of the Court will be directed to amend the docket to reflect the full and proper spelling of the Defendants' names.

[2] They are Warden John S. Wolfe, Assistant Warden Cherie N. Peay, Security Chief Allen Gang, Lieutenant Reagan, Captain Eric Jefferson, Lieutenant Kelson, Lieutenant Christopher Ogbolu, Lieutenant Wilie Taylor, Sergeant Robert Jordan, Sergeant Iwill Mason, Sergeant Rene Greene, Officer Ajiobode, Officer Alexander Fleet, Hearing Officer Jon Sandstrom, Dietary Supervisor Maria Maximo-Sabundavo, and John Doe.

105.6. The Defendants' motion, construed as a motion for summary judgment, will be granted in part and denied in part.

I.      Background[3]

Ryidu-X swore that since he was assigned to the segregation unit at Jessup Correctional Institution ("JCI") on March 11, 2010, he has been subjected to unconstitutionally harsh living conditions, including: denial of all outdoor recreation; denial of material to clean his cell; bathing in unclean, unheated insect-infested showers; being forced to choose between recreation, medical care appointments, or showers during his daily one-hour of out-of-cell time; denial of hot meals; denial of a locked box to store outgoing mail; disposal of his outgoing mail in the trash; a lack of furnishings in his cell, such as a chair, desk, or locker; denial of adequate amounts of hygiene items, laundry detergent, writing supplies, and postage; confinement in an unheated cell with a broken window, a broken toilet; and a lack of water. ECF No. 25. Ryidu-X has submitted four grievances to the Inmate Grievance Office ("IGO").[4]

Ryidu-X suffers from hypertension and a cardiac condition, which preceded his transfer to JCI, as did his skin rash. *See* ECF No. 20-15 at 5, 8. On January 3, 2011, Ryidu-X was permanently barred from having visitors for violating Rule 110[5] because binder clips--escape paraphernalia--were found in his shoes. ECF No. 20-2.

---

[3] In reviewing the motion for summary judgment, Ryidu-X's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[4] They are: (1) IGO 2011-2369, review of ARP JCI-1078-11, concerning cell cleaning, dirty showers, one-hour out-of-cell restrictions, denial of outside recreation, mail security, lack of cell furnishings while on segregation, and laundry detergent; (2) IGO 2012-0105, review of ARP JCI-1435-11, concerning lack of hot water beginning July 30, 2011; (3) IGO 2012-0106, review of ARP JCI-1449-11, concerning a policy whereby supervising officers must sign ARP complaints before they proceed; and (4) IGO 2012-0927, review of ARP JCI-2041-11, concerning an inoperable toilet between November 24 and December 1, 2011. ECF No. 20-16 ¶ 3.

[5] The record does not describe Rule 110.

On February 10, 2012, Ryidu-X filed suit under 42 U.S.C. § 1983, seeking an injunction, a declaration that the Defendants have violated his constitutional rights, and damages. On March 30, 2012, JCI accepted service for most of the Defendants; Reagan, Kelson, Ajiobode, Sandstrom, and Maximo-Sabundavo have not been served. *See* ECF No. 8. On August 7, 2012, Stouffer, Wolfe, Peay, Jefferson, Ogbolu, Taylor, Jordon, Mason, Green, and Fleet moved to dismiss or, in the alternative, for summary judgment. ECF No. 20. On September 12, 2012, Ryidu-X opposed the motion. ECF No. 25.[6] The Defendants have not replied.

II.   Analysis

    A.   Standard of Review

Under Fed. R. Civ. P. 56(a), "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [its] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court also "must abide by the affirmative obligation of the

---

[6] In his response, Ryidu-X raises for the first time claims that he was denied medical care, subjected to multiple tests for illegal drug use, and subjected to a disciplinary hearing convened months after he had been issued an infraction for smuggling a paperclip in his shoe months after Ryidu-X refused sexual advances and complained of staff misconduct. *See* ECF No. 25 at 32. He further argues that the only reason he remains at JCI is in retaliation for these complaints. *Id.* at 29-30, 32 and 34. Although the Court will not address these new claims, Ryidu-X may raise them in a separate action after meeting any administrative prerequisites. The Clerk of the Court will be directed to provide him with the relevant forms.

trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

### B. Failure to Exhaust Administrative Remedies

The Court must first consider the Defendants' claim that most of the allegations contained in the Complaint must be dismissed in their entirety because Ryidu-X's failure to exhaust administrative remedies. Under the Prison Litigation Reform Act ("PLRA"):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.

Ryidu-X is subject to the strict requirements of the exhaustion provisions. It is of no consequence that he is aggrieved by a single occurrence, as opposed to a general conditions-of-confinement claim. *See Porter v. Nussle,* 534 U.S. 516, 528 (2002) (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure. *See Booth v. Churner,* 532 U.S. 731, 741 (2001). A claim which has not been exhausted may not be considered by this court. *See Jones v. Bock,* 549 U.S. 199, 220 (2007).

Administrative remedies must, however, be available to the prisoner and this Court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell,* 478 F.3d 1223, 1225 (10th Cir. 2007). The Fourth Circuit has addressed the meaning of "available" remedies, stating:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. Conversely, a prisoner does not exhaust all available remedies simply by failing to follow

the required steps so that remedies that once were available to him no longer are. Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies in accordance with the applicable procedural rules, so that prison officials have been given an opportunity to address the claims administratively. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond.

*Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (internal citations and quotation marks omitted).

Ryidu-X's unexhausted claims must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that the Defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003). The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process.[7]

Maryland provides a three-step grievance process: request for administrative remedy to the Warden of the institution (commonly referred to as an "ARP"); an appeal of administrative dismissal to the Commissioner of Corrections; and submission of the grievance to the IGO.[8] *See Chase*, 286 F. Supp. 2d at 529. Ryidu-X provides no evidence to counter the Defendants' submission of a Declaration by Scott S. Oakley, Executive Director of the IGO, stating that Ryidu-X filed four IGO appeals concerning JCI conditions of confinement:

    IGO 2011-2369    Review of ARP JCI-1078-11, concerning cell cleaning, dirty showers, one-hour out-of-cell restrictions, denial of outside

---

[7] *Chase*, 582 F. Supp. 2d at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

[8] An appeal to the IGO must be filed within thirty days following an unfavorable decision from the Commissioner. *See* Md. Code Ann., Corr. Serv. Art. § 10-206 and COMAR, Title 12 § 07.01.03.

|  |  |
|---|---|
|  | recreation, mail security, lack of cell furnishings while on segregation, and laundry detergent; |
| IGO 2012-0105 | Review of ARP JCI-1435-11, concerning lack of hot water beginning July 30, 2011; |
| IGO 2012-0106 | Review of ARP JCI-1449-11, concerning a policy whereby supervising officers must sign ARP complaints before they proceed;[9] and |
| IGO 2012-0927 | Review of ARP JCI-2041-11, concerning an inoperable toilet between November 24 and December 1, 2011. |

Only those claims that have been exhausted shall be addressed on the merits here. Because both parties have filed evidence, the Court will treat the motion as one for summary judgment.

C.   Conditions of Confinement

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, conditions that are merely restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society." *Id.*

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original). "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). Prison officials cannot be held liable for violating the Eighth Amendment unless they knew of, and then

---

[9] This ARP concern is not raised as an issue in this case and will not be further addressed.

disregarded, an excessive risk to inmate health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Ryidu-X swears to numerous unconstitutional conditions: he has not been given available and adequate cleaning supplies; the prison relies on a feral cat colony for rodent control because of the filthy nature of the prison; he is then forced to choose between attending sick call, taking a shower, or having recreation during his daily one-hour out-of-cell period; each JCI housing unit has an outside "small yard" that could be made available for recreation by segregation prisoners; he has developed problems with eyesight, high cholesterol, hypertension and a heart ailment as a result of conditions at JCI; he should not have been kept a week in a cell with a toilet that would not flush; and the "stuck" steam valve which prison officials contend resulted in an inadequate supply of hot water over a 60-day period in the summer of 2011 is a pretext that enables prison officials to save money.[10] ECF No. 25.

No single claim concerning conditions of confinement at JCI is sufficient to state a violation of the Eighth Amendment. While conditions at JCI maybe harsh, Ryidu-X has provided no evidence suggesting that these conditions have caused to him suffer serious or significant physical or emotional injury as required under *Strickler*. His hypertension and cardiac condition, which are linked to symptoms such as shortness of breath, nausea or headache, preceded his transfer to JCI, as did his skin rash. *See* ECF No. 20-15 at 5, 8. Ryidu-X states he infrequently seeks medical care because JCI policy forces him to choose between taking a shower, pursuing recreation, or attending sick call during the one hour a day he is permitted out of his cell. *See* ECF No. 25. His choice to forego sick call supports the Defendants' position that the overall conditions of confinement at JCI are not sufficiently onerous to constitute an

---

[10] Ryidu-X's complaint that he is not provided enough stamps, legal-sized paper and envelopes in his welfare commissary package (contained in ECF No. 25) is unexhausted and will not be addressed.

Eighth Amendment claim. The Defendants are entitled to summary judgment on his claim of unconstitutional conditions.

D.  Denial of Visitation

Ryidu-X did not grieve his complaint concerning visitation through the ARP process. However, to the extent that this claim is subject to the exhaustion requirements,[11] the Defendants have not asserted the defense of exhaustion for the denial of visitation claim and have waived it. *See Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005); *cf.* ECF No 20-1 at 20 (asserting lack of exhaustion for some claims).

Although prisoners have no constitutional right to "unfettered" visitation, *see Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989), the Defendants' "permanent" restriction of visitation privileges may state a claim of constitutional dimension. In *Overton v. Bazzetta,* 539 U.S. 126, 137-138 (2003), the Supreme Court held that a prison policy that "uses withdrawal of visitation privileges for a limited period as a regular means of effecting prison discipline" does not result in cruel and unusual punishment. *Id.* at 137-38. In holding that a two-year deprivation of visitation privileges did not violate the Eighth Amendment, the Court explained:

> This is not a dramatic departure from accepted standards for conditions of confinement. Nor does the regulation create inhumane prison conditions, deprive inmates of basic necessities, or fail to protect their health or safety. Nor does it involve the infliction of pain or injury, or deliberate indifference to the risk that it might occur. If the withdrawal of all visitation privilege were permanent or for a much longer period, or if it were applied in an arbitrary manner to a particular inmate, the case would present different considerations.

*Id.*, 539 U.S. at 137 (citations omitted). Here, it appears that Ryidu-X, who has a lengthy sentence yet to serve,[12] cannot apply for reinstatement of visiting privileges. Summary

---

[11] There were a hearing and appeal on Ryidu-X's sanction. *See* ECF No. 20-2.

[12] In 1998, Ryidu-X, then known as Richard Janey, was convicted of second-degree murder and sentenced to twenty-five years' incarceration. While incarcerated, he has been convicted and sentenced to additional terms of

8

judgment will be denied as to this claim, and the parties will be provided an opportunity for further briefing.[13]

III.     Conclusion

For the reasons stated above, the motion, construed as one for summary judgment, will be granted in part and denied in part.

2/5/13
(Date)

_____
William D. Quarles
United States District Judge

---

confinement in connection with several assaults on corrections staff. *See* http://casesearch.courts.state.md.us/inquiry/inquirySearch.jis

[13] Even if Reagan, Kelson, Ajiobode, Maximo-Sabundavo, and Doe had been served, there is no indication that they could be responsible for the permanent denial of visitation, the sole claim remaining in this case. Accordingly, Regan, Kelson, Ajiobode, Maximo-Sabundavo, and Doe will be dismissed.