IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MALCOM M. RYIDU-X #273-575,
        Plaintiff,        :

        v.        :    CIVIL NO. WDQ-12-0423

J. MICHAEL STOUFFER, Commissioner,  :
*et al.*,
        Defendants.        :

MEMORANDUM OPINION

Malcom M. Ryidu-X, *pro se*, sued Commissioner J. Michael Stouffer and others[1] (collectively, the "defendants") for civil rights violations. Pending is the defendants' unopposed supplemental motion to dismiss or, in the alternative, motion for summary judgment. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the following reasons, the motion, construed as one for summary judgment, will be granted.[2]

I.    Background[3]

On March 11, 2010, Ryidu-X was transferred from Western Correctional Institution to Jessup Correctional Institution. ECF No. 32-1 at 33. As part of the transfer, Ryidu-X was searched, and correctional officers discovered binder clips in his shoes. *Id.* On March 15, 2010,

---

[1] The other remaining defendants are Warden John S. Wolfe, Assistant Warden Cherie N. Peay, Security Chief Allen Gang, Captain Eric Jefferson, Christopher Ogbolu, Lt. Willie Taylor, Sergeant Robert Jordan, Iwill Mason, Sergeant Renee Greene, and Alexander Fleet.

[2] Also pending is Ryidu-X's motion to appoint counsel. ECF No. 29. The Court's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is discretionary and may be invoked where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also, Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982). Whether such circumstances exist in a particular case depends on the characteristics of the claim and the litigant. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. District Court*, 490 U.S. 296 (1989). Where a colorable claim exists but the litigant has no capacity to present it, counsel should be appointed. *Id.* Having considered Ryidu-X's filings, the Court finds that he has demonstrated the wherewithal to articulate the legal and factual basis of his claim, and the issue pending before the Court is not unduly complicated. Accordingly, his motion to appoint counsel will be denied.

[3] In reviewing the motion for summary judgment, Ryidu-X's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Ryidu-X was charged with violating Rules 110 (possession of an article that could be used in an escape), 308 (unauthorized possession of state property), and 406 (possession of contraband). *Id.* On January 3, 2011, a disciplinary hearing was conducted, and Ryidu-X was found to have possessed of an article that could be used in an escape and contraband. *Id.* at 33-34. Ryidu-X was sanctioned with "90 days of punitive segregation and the permanent loss of visits due to a 3rd time offense." *Id.* at 34. On February 2, 2011, the Warden affirmed the decision. *Id.* On February 18, 2011, Ryidu-X filed a grievance challenging the proper procedures of disciplinary procedure. *Id.* at 32. On August 25, 2011, an administrative law judge denied the grievance. *Id.* at 39.

On February 10, 2012, Ryidu-X filed suit under 42 U.S.C. § 1983, seeking an injunction, a declaration that the defendants have violated his constitutional rights, and damages. ECF No. 1. On February 2, 2013, the Court granted in part and denied in part the defendants' motion for summary judgment.[4] ECF No. 28. The Court held that Ryidu-X's claim about the unconstitutionality of his permanent denial of visitation was not barred by his failure to exhaust administrative remedies and ordered additional briefing. *Id.*; *see* ECF No. 27 at 8-9.

On April 4, 2013, the defendants moved to dismiss or, in the alternative, for summary judgment. ECF No. 32. They attached documents from Ryidu-X's disciplinary hearing and grievance, records from Division of Correction's ("DOC") OBSCIS system, declarations that Ryidu-X has not applied for reinstatement of visitation, and the DOC's policies on visitation. ECF Nos. 32-1 to 32-5. On April 8, 2013, Ryidu-X was mailed the Court's "Rule 12/56 letter," which provided notice of the motion and its consequences, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). Ryidu-X has not responded.

---

[4] Summary judgment was granted for the defendants on Ryidu-X's claims about the conditions of his confinement, and several defendants were dismissed. ECF No. 28.

II.  Analysis

A.  Legal Standard

Under Fed. R. Civ. P. 56(a), "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [its] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court also "must abide by the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

B.  The Defendants' Motion

Ryidu-X claims that the defendants violated his constitutional rights by totally denying him visitation. ECF No. 1 ¶ 44. The defendants assert that because the denial is indefinite—not permanent—and Ryidu-X may apply for reinstatement, he cannot prevail under the Eighth Amendment. ECF No. 32 at 6-9.

Prisoners have no constitutional right to "unfettered" visitation. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). In *Overton v. v. Bazzetta*, 539 U.S. 126 (2003), the Supreme Court held that a prison policy that "uses withdrawal of visitation privileges for a limited period as a regular means of effecting prison discipline" does not result in cruel and

unusual punishment. *Id.* at 137. In holding that a two-year suspension of visitation privileges before permitting reinstatement did not violate the Eighth Amendment, the Court explained:

> This is not a dramatic departure from accepted standards for conditions of confinement. Nor does the regulation create inhumane prison conditions, deprive inmates of basic necessities, or fail to protect their health or safety. Nor does it involve the infliction of pain or injury, or deliberate indifference to the risk that it might occur. If the withdrawal of all visitation privilege were permanent or for a much longer period, or if it were applied in an arbitrary manner to a particular inmate, the case would present different consideration.

*Id.*, 539 U.S. at 137 (citations omitted).

Despite Ryidu-X's discipline being denoted as "permanent" loss of visitation, his records and the DOC's procedures make clear that he is subject only to definite denial of visitation. *See, e.g.*, ECF Nos. 32-2, 32-5 at 7. Further, prisoners may apply for reinstatement of visitation 18 months after the sanction was imposed. ECF No. 32-5 at 5.

Although he is eligible to apply for reinstatement of visitation, Ryidu-X has not done so. *See* ECF Nos. 32-2, ECF No. 32-3. He has not shown that his visitation privileges were withdrawn permanently, for considerably longer than two years, or in an arbitrary fashion, as required for a constitutional violation under *Overton. See Overton*, 539 U.S. at 137. Accordingly, the defendants are entitled to summary judgment.

III. Conclusion

For the reasons stated above, the defendant's motion, construed as a motion for summary judgment will be granted.

5/9/13
(Date)

William D. Quarles
United States District Judge

4